United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IO GROUP INC., | No. C 04-4174-SBA |
| Plaintiff, | |
| v. | **ORDER** |
| ARYEH MEIR, | [Docket No. 34] |
| Defendant. | |

This matter comes before the Court on Plaintiff IO Group, Inc.'s application for default judgment against Defendant Aryeh Meir [Docket No. 34.] Having fully considered Plaintiff's application, the allegations contained in the Complaint, the declarations and exhibits filed in support of Plaintiff's application, the factors enunciated in *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986), and for good cause appearing, the Court hereby GRANTS Plaintiff's application as set forth in this Order.

**BACKGROUND**

Plaintiff IO Group, Inc. ("Plaintiff") is a California corporation doing business as "Titan Media," with its principal place of business located at 121 Capp Street, Suite 200, San Francisco, California 94110. Complaint ¶ 2. Plaintiff produces and distributes adult-oriented entertainment products, including Internet website content, audiovisual works, photographs, videos and DVDs. *Id.* ¶ 9.

Defendant Aryeh Meir ("Defendant") is an individual who resides in British Columbia, Canada who owned and operated www.icravedick.com, a highly-interactive, commercial Internet

website. Complaint ¶¶ 3, 14.

Plaintiff alleges that Defendant illegally copied, distributed and publicly displayed on www.icravedick.com, and other websites owned or operated by the Defendant, one hundred and sixty-seven (167) images that belong to Plaintiff and for which Plaintiff holds valid Certificates of Copyright Registration. Complaint ¶¶ 18, 21.

On April 16, 2004, Plaintiff sent to Archer Consulting, Inc., the fictitious entity to whom the website icravedick was registered at the time, a take-down notice and a letter demanding that it cease and desist illegally copying and publishing Plaintiff's works.[1] Declaration of Gill Sperlein ("Sperlein Decl.") ¶ 8; Exs. A & B. The April 16, 2004 letter explained that Plaintiff believed the website owned or controlled by Archer Consulting, Inc. infringed upon Plaintiff's copyrights. *Id.* at Ex. B. The operator removed Plaintiff's images from the website. *Id.* ¶ 9. Through counsel, Plaintiff attempted to reach a compromise and avoid litigation, but Defendant refused to negotiate a settlement. *Id.*

On October 1, 2004, Plaintiff filed the instant action. Defendant was served with a copy of the Summons and Complaint on November 1, 2004. *Id.* ¶ 12. A response became due on November 21, 2004. On November 28, 2004, Plaintiff delivered to Defendant by United States mail and by e-mail a letter reminding Defendant that a response was past due and that Plaintiff intended to ask the Clerk of the Court to enter default against Defendant. Defendant failed to serve an answer or otherwise respond to the Complaint. *Id.* ¶ 14. Upon Plaintiff's request, the Clerk entered default on January 21, 2005 [docket no. 7.]

On February 25, 2005, without first having moved to set aside the entry of default, Defendant, proceeding *in pro per*, and Plaintiff filed a Joint Case Management Statement and Proposed Order in which Defendant contested all of the facts in Plaintiff's Complaint, and Plaintiff expressed a willingness to postpone discovery upon Defendant's providing credible and verifiable information that he was not the owner of the allegedly offending website [docket no. 16.] On March

---

[1] www.icravedick.com was registered using the fictitious business Archer Consulting. Plaintiff later subpoenaed the payment processor for the site and learned that all funds were being paid to Defendant.

10, 2005, the parties appeared before the Court in a telephonic Case Management Conference, stipulated to set aside the default, and agreed to have the matter referred to a magistrate judge for an early settlement conference. On March 21, 2005 the Court entered Plaintiff's and Defendant's Stipulation in which they stipulated to set aside the default and appear before a magistrate judge for an early settlement conference. In addition, the parties stipulated to a further case management conference on May 12, 2005, and agreed that Defendant would file an answer to the Complaint, or other responsive pleading, within thirty (30) days of the stipulation and order. Defendant failed to appear for the scheduled settlement conference and failed to file an answer or other responsive pleading by April 20, 2005, as required by the order. Moreover, Defendant failed to make himself available for the May 12, 2005 telephonic Case Management Conference.

On May 18, 2005, this Court issued an Order to Show Cause why sanctions should not be imposed and/or default re-entered against Defendant for his failure to comply with the Court's March 21, 2005 Order. Defendant failed to appear for the show cause hearing. Consequently, the Court re-entered default against Defendant on June 21, 2005 and ordered Plaintiff to file a motion for default judgment by July 18, 2005. On July 1, 2005, Plaintiff filed the instant application for default judgment [docket no. 34.]

## **LEGAL STANDARD**

The decision of whether to grant or deny a request for default judgment lies within the sound discretion of the district court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (affirming denial of motion for default judgment and *sua sponte* dismissal of plaintiff's claims). In exercising its discretion, the district court is guided by consideration of the following factors:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986) (affirming denial of motion for default judgment where district court had serious reservations concerning the substantive merit of the claims, a large amount of damages were at issue, and there was a factual dispute with regard to the matters alleged in the pleadings).

3

**A.     The *Eitel* Factors**

    **1.     Substantive Merits and Sufficiency of the Complaint**

The first two *Eitel* factors are (1) the merits of plaintiff's substantive claim, and (2) the sufficiency of the complaint. *Eitel*, 782 F.2d at 1471-72. These two factors require that a plaintiff "state a claim on which the [plaintiff] may recover." *Kloepping v. Fireman's Fund*, No. C 94-2684 TEH, 1996 WL 75314, at *2 (N.D. Cal. Feb. 13, 1996). Since default has been entered against Defendant, the factual allegations of the Complaint, with the exception of the allegations regarding damages, will be taken as true. *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977).

        **a.     Copyright Infringement**

Plaintiff alleged a claim for copyright infringement.

The Copyright Act, 17 U.S.C. § 106, protects the owner of a copyright by granting him or her exclusive rights to "reproduce, distribute, and publicly display copies of the work." *Mattel Inc. v. Walking Mt. Prods.*, 353 F.3d 792, 799 (9th Cir. 2003) (citation omitted). "A prima facie case of copyright infringement by reproduction is established by showing ownership by the plaintiff and copying by the defendant." *Id.*

The Complaint alleges that Plaintiff holds properly registered copyright certificates for the one hundred and sixty seven (167) photographic and audiovisual works that it claims Defendant reproduced. Complaint ¶¶ 23, 25. The Complaint further alleges that Defendant infringed these works by reproducing, distributing and publicly displaying the works on the www.icravedick.com and other websites without proper approval or authorization of Plaintiff. *Id.* ¶ 26. Accordingly, Plaintiff has stated a claim for copyright infringement.

        **b.     Right to Publicity**

The Complaint also alleges a claim for misappropriation of the right to publicity under both common law and under California Civil Code § 3344.

Under California law, an individual's right to publicity is invaded if another appropriates for his advantage the individual's name, image, identity or likeness. *Fleet v. CBS, Inc.*, 58 Cal. Rptr. 2d 645, 649 (1996). "This is an actionable tort under both common law and Civil Code section 3344."

4

*Id.*

"A common law cause of action for appropriation of name or likeness may be pleaded by alleging (1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury." *Id.* (citations omitted). "In addition, to plead the statutory remedy provided in Civil Code section 3344, there must also be an allegation of a knowing use of the plaintiff's name, photograph or likeness for purposes of advertising or solicitation or purchases." *Id.* "Furthermore . . . [a] 'direct' connection must be alleged between the use and the commercial purpose." *Id.*

The Complaint alleges that Plaintiff's copyrighted works embody images of actors all of whom executed written agreements with Plaintiff through which Plaintiff became the exclusive proprietor of the actors' rights to publicity in the performances embodied in Plaintiff's creative works. Complaint ¶ 35; *see KNB Enterprises v. Matthews*, 92 Cal. Rptr. 2d 713, 721-23 (2000) (where models assigned right to publicity to owner of copyrighted photo, copyright owner could bring claim under section 3344 for unauthorized use of the model's human likeness). The Complaint further alleges that Defendant displayed photographs of the actors for commercial gain without Plaintiff's consent. *Id.* ¶ 37. As a direct and proximate result of Defendant' conduct, Plaintiff claims that it was damaged. *Id.* ¶ 38. The Complaint further claims that Defendant acted in conscious disregard of Plaintiff's rights. *Id.* ¶ 39. Thus, Plaintiff has stated a claim for both common law and statutory misappropriation of the right to publicity.

Accordingly, the Court finds that the first two *Eitel* factors are satisfied.

**2.   Amount at Stake**

Under the third *Eitel* factor, the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct. Here, Plaintiff is seeking $1,252,500 in statutory damages in relation to its copyright claim, and $125,250 in statutory damages in relation to its statutory misappropriation of right to publicity claim. Given that Defendant never filed a responsive pleading in this action, and discovery was never taken, it is unknown how this amount correlates with Defendant's ill-gotten gains. Plaintiff has, however, submitted evidence sufficient to show that it sells its images at the prevailing rate of $2,500 per image. Declaration of Keith Webb ("Webb

5

Decl.") ¶ 8; Complaint ¶ 12.[2] Plaintiff also states that it uses these images to drive subscriptions to its own website and thus illegal distribution of these images decreases the overall value of its site. Webb Decl. ¶ 5. Illegal distribution of Plaintiff's works also decreases the uniqueness of the works and damages Plaintiff's goodwill, thereby increasing the amount of Plaintiff's loss. In light of the circumstances, this Court finds that Plaintiff's request of $2,500 per image is reasonable.

Further, the amount of damages requested by Plaintiff are within the range that is specifically authorized by statute. *See* 17 U.S.C. § 504 (providing that court may award statutory damages in the amount of $750 to $30,000 per work, increased to $150,000 in cases of willful infringement); Cal. Civ. Code § 3344(a) (providing that court may award statutory damages in the amount of $750 per photograph). Given this, the Court finds that the third *Eitel* factor has been met.

### 3.   Possibility of Prejudice

The fourth *Eitel* factor considers whether Plaintiff will suffer prejudice if default judgment is not entered. Potential prejudice to Plaintiff favors granting default judgment. Considering Defendant's refusal to cooperate in this case, if Court were to deny Plaintiff's application for default judgment, Plaintiff will likely be without other recourse for recovery. Thus, the fourth *Eitel* factor is satisfied.

### 4.   Possibility of Dispute

The fifth *Eitel* factor considers the possibility of dispute as to any material facts in the case. Upon entry of default, all well-pleaded facts in the Complaint are taken as true. Accordingly, no genuine dispute of material facts would preclude granting Plaintiff's application.

### 5.   Possibility of Excusable Neglect

The sixth *Eitel* factor considers the possibility that the default resulted from excusable neglect. Plaintiff sent the fictitious entity that registered Defendant's website a cease-and-desist notice and letter on April 16, 2004 regarding the conduct alleged in the instant action. Sperlein Decl. ¶ 8. Defendant was also properly served with summons and Complaint on November 1, 2004. Further, on November 28, 2004, Plaintiff mailed to Defendant a letter regarding the Complaint and

---

[2] When $2,500 per image is multiplied by 167 images, the result is $417,500. When this amount is trebled, it results in Plaintiff's requested damages of $1,252,500.

reminding Defendant that its response was past due. Defendant briefly appeared before this Court in a Case Management Conference held on March 10, 2005, at which time the case was referred to an early settlement conference. Defendant never appeared for the settlement conference, or ever again for that matter. Finally, Defendant has been served with the instant application. Neither Plaintiff nor the Court has received any response from Defendant. Thus, considering the numerous opportunities for Defendant to participate in this action the possibility of excusable neglect in this action is remote.

### 6. Policy for Deciding on the Merits

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 728 F.2d at 1472. However, the mere existence of Fed. R. Civ. P. 55(b) indicates that "this preference, standing alone, is not dispositive." *Kloepping*, 1996 WL 75314, at *3. Moreover, Defendant's failure to answer the Complaint makes a decision on the merits impractical, if not impossible. Under Fed. R. Civ. P. 55(a), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action. Thus, "the preference to decide cases on the merits does not preclude a court from granting default judgment." *Kloepping*, 1996 WL 75314, at *3.

In light of the foregoing analysis, the Court concludes that it may properly enter default judgment against Defendant.

## B. Damages

Since default judgment is proper, the Court must next assess Plaintiff's requested award of damages. Here, Plaintiff seeks monetary damages for two claims: (1) copyright infringement; and (2) statutory misappropriation of right of publicity under California Civil Code § 3344. Plaintiff seeks statutory damages in the amount of $1,252,500 for Defendant's willful infringement of plaintiff's copyrighted works and statutory damages in the amount of $125,250 for statutory misappropriation of right to publicity.

### 1. Copyright Claim

In an action for copyright infringement, the copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement. Alternatively, at the election of the plaintiff, the Court may

7

1   award statutory damages in the amount of $750.00 to $30,000.00 per work as it considers just,
2   increased to $150,000 in cases of willful infringement.  17 U.S.C. § 504.

3       In this case, Plaintiff argues that it should be awarded statutory damages in the amount of
4   $2,500 per work because it is too difficult to determine the amount or extent of Defendant's illicit
5   profits or the actual amount of Plaintiff's loss.  Specifically, Plaintiff contends that it cannot
6   determine the amount of Defendant's profits because Defendant failed to respond in this action, and
7   discovery did not occur.  Additionally, Plaintiff alleges its actual losses cannot be readily determined
8   given that the value of Plaintiff's works lies in their high quality and uniqueness and given that
9   Defendant's actions have resulted in harm to Plaintiff's reputation.  Plaintiff further notes that
10  Defendant apparently took no precautions to prevent further distribution of Plaintiff's works, and
11  thus Defendant may have allowed Plaintiff's images to be further distributed to an unknown number
12  of other persons.  Webb Decl. ¶ 9.  Plaintiff has submitted evidence showing that it charges a
13  licensing fee of $2,500 per image.  Webb Decl. ¶ 10.  Plaintiff therefore asserts that $2,500 should
14  constitute the minimum amount of statutory damages awarded per work.  In light of the absence of
15  objective evidence of harm and the difficulty in determining actual damages, statutory damages is an
16  appropriate measure.

17      Plaintiff further asserts that because of the willfulness of Defendant's infringing acts, the
18  statutory damages should be trebled to $7,500 per work, for a total of $1,252,500.  "Willful"
19  infringement means "with knowledge that the defendant's conduct constitutes copyright
20  infringement."  *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1335 & 1335 n.3 (9th Cir.
21  1990).  This includes constructive knowledge.  *See Spectravest, Inc. v. Fleet Street, Ltd.*, No.
22  C-88-4539 RFP, 1989 WL 135386, at *5 (N. D. Cal. Aug. 23, 1989) ("To find [an infringer's]
23  actions willful, we need only determine whether she should have known that her actions would
24  constitute infringement.").

25      In *Perfect 10, Inc. v. Talisman Communs., Inc.*, No. CV99-10450 RAP MCX, 2000 WL
26  364813 (C.D. Cal. Mar. 27, 2000), plaintiff, a magazine publisher sued a website for publishing its
27  adult photographs on the Internet.  The court found that the infringement was willful because: (1) the
28  magazine from which the photographs were taken displayed a clear copyright notice; and (2) the

1  photographs themselves displayed the names of the models and other information. *Id.* at *4. The
2  court then ordered statutory damages in the amount $100,000 per infringing photograph. *Id.*

3        Here, the photographs at issue were displayed on a website maintained by Plaintiff. High-
4  resolution versions of its photographic works and audiovisual content can be viewed by individuals
5  who pay a monthly subscription fee. Complaint ¶ 9. Users are allowed to view only and are not
6  allowed to download or save materials to their home computers. *Id.* The website contains a "Legal
7  Statement of Intellectual Property Rights." Webb Decl., Exh. B. The statement provides in relevant
8  part:

> [a]ll web pages text and accompanying code is intellectual property and is copyrighted, having a retail value of $6000.00 US and is only available when ordered directly from the author. Each individual photograph or image contained on our web pages or portion thereof contained in this site has a retail value of $2,500 U.S. and is only available when ordered from the author . . . No portion of this site may be used or redistributed for commercial or personal purposes.

*Id.* The statement further provides that "[u]sers may not circumnavigate any technological means we have deployed to effectively control access on our site to protect our materials . . . and [doing so] is considered theft. Theft of any of the above materials will result in swift and severe legal action being taken . . . [including a civil suit for] copyright infringement." *Id.* In several places, the statement indicates that the website is protected by federal copyright laws. *Id.* Given this, any visitor to Plaintiff's site would or should have known that the material contained in the site was protected by copyright.

      Further, Plaintiff wrote a cease-and-desist letter before filing of the instant Complaint, specifically informing the fictitious entity to whom the website icravedick was registered at the time that it was violating Plaintiff's copyrights and listing each such alleged act of infringement. Sperlein Decl. Exs. A & B. The letter also sought compensation for the acts of infringement and further stated if the entity failed to satisfy its financial obligation, Plaintiff would file a complaint in federal court seeking damages. While the offending images were removed, Defendant has been unwilling to compensate Plaintiff for the illegal use. Further, Plaintiff attempted to reach a compromise with Defendant in order to avoid litigation, but Defendant refused to negotiate in good faith in order to reach a settlement.

9

In light of the foregoing, the Court finds that the infringement was willful. Since, the Court is authorized to award up to $150,000 per copyright, the Court finds that Plaintiff's request for $7,500 per copyright is reasonable. Therefore, Plaintiff's request for a total of $1,252,500 in statutory damages is GRANTED.

### 2. Misappropriation Claim

California Civil Code § 3344 provides that, "[a]ny person who knowingly uses another's . . . photograph . . . in any manner, on or in products, merchandise, or goods or for purposes of advertising or selling, or soliciting purchases of products, merchandise, goods or services, without such person's prior consent . . . shall be liable for any damages . . . equal to the greater of seven hundred fifty dollars ($750) or the actual damages." Cal Civ. Code § 3344(a).[3] The remedies provided for by § 3344 are cumulative and shall be in addition to any others provided for by law. Cal. Civ. Code § 3344(g).

Here, under California Civil Code § 3344, Plaintiff is entitled to statutory damages of $750 for each unauthorized use of Plaintiff's photographs. Cal. Civ. Code § 3344(a); *see Perfect 10,* 2000 WL 364813, at * 4-5 (awarding statutory damages of $750 for each model's rights violated). Plaintiff argues that it should therefore be awarded damages in the amount of $125,250 because one hundred and sixty seven (167) unique images of recognizable models appeared on Defendant's websites. In support of this, Plaintiff has provided the Court with a chart documenting the one hundred and sixty seven url addresses and names of the recognizable models found on Defendant's websites. Supplemental Declaration of Gill Sperlein ("Supp. Sperlein Decl.") Ex. A. Additionally, Plaintiff provided a compilation of the images Defendant improperly and without prior authorization distributed on his websites. Supplemental Declaration of Keith Webb ("Supp. Webb Decl.") Ex. A.

Plaintiff contends that one hundred and seventeen (117) images contain at least one identifiable model and twenty-five (25) images contain two readily identifiable models. Plaintiff admits that a person is not recognizable where the face is obscured and there are no other unique

---

[3] It is well established that the Copyright Act does not preempt this section of the California Code. *See Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1004-05 (9th Cir. 2001) (section 3344 not preempted by Copyright Act).

10

1  characteristics, such as a tattoo. Supp. Sperlein Decl. ¶6. Plaintiff concedes twenty-five (25) such
2  images contain unrecognizable models. *Id.* & Ex. A. Upon reviewing Plaintiff's evidence, the Court
3  finds Plaintiff's evidence is sufficient to show that one hundred and thirty nine (139) readily
4  identifiable images are present in the photographs. With respect to three of the photographs, the
5  Court disagrees that the model's face or body is readily identifiable.[4] Accordingly, Plaintiff has
6  proven it is entitled to damages under this section in the amount of $104,250.[5]

## CONCLUSION

Plaintiff's Application for Default Judgment is GRANTED and Plaintiff is awarded damages in the total amount of $1,356,750.

IT IS SO ORDERED.

Dated: January 27, 2006

SAUNDRA BROWN ARMSTRONG

United States District Judge

---

[4] Of the one-hundred sixty seven images Plaintiff provided, twenty-five (25) of the photographs did not present a readily identifiable image. Additionally, in three of the photographs, the model's face or body was not readily identifiable. This results in one hundred and thirty-nine (139) readily identifiable images.

[5] $104,250 is equal to one hundred and thirty nine (139) photographs at $750 each.